JERRY L. MOUDY AND LISBETH MOUDY, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Moudy v. Commissioner
Docket No. 36299-87
United States Tax Court
T.C. Memo 1990-169; 1990 Tax Ct. Memo LEXIS 195; 59 T.C.M. (CCH) 280; T.C.M. (RIA) 90169; March 29, 1990
*195 P's partnership purchased "section 38 property" which was later transferred to a corporation formed by the partners. Thereafter, during 1982, the corporation ceased business and, at about the same time, P petitioned into bankruptcy. The trustee listed the corporate shares as an asset, but without value. The trustee did not claim the section 38 property to be a part of P-bankrupt's estate. The bankruptcy was a "no asset" proceeding. R determined that P should recapture and report as income for 1982 the investment tax credit claimed in earlier years. P claims that the assets became part of the bankrupt estate and section 1398, I.R.C., applies. Held: A partnership may transfer section 38 property to a corporation, the effect of which is a mere change in the form of conducting business which does not result in recapture of investment tax credit. Borgic v. Commissioner, 86 T.C. 643 (1986), followed. Held further: Section 1398 does not apply, and if it did, it would not operate in the facts of this case to relieve P from the requirement to report income from recapture of investment tax credit. William A. Bowles, for the petitioners. John L. Simpson, for the respondent. GERBER
MEMORANDUM *196 FINDINGS OF FACT AND OPINION GERBER, Judge: Respondent, in a statutory notice of deficiency, determined a $ 20,211.38 Federal income tax deficiency for petitioners' 1982 taxable year. The deficiency is solely attributable to respondent's determination that previously claimed investment tax credit should be recaptured with respect to certain business machinery. FINDINGS OF FACT The parties entered into a stipulation of facts, along with exhibits, which are incorporated by this reference. Jerry L. (references to petitioner in the singular, refer to Jerry L. Moudy) and Lisbeth Moudy (petitioners) were residents of Tulsa, Oklahoma, at the time their petition was filed in this case. Petitioner and Ricky B. Engles (Engles), in 1979 or 1980, formed a partnership named Moudy & Engles Manufacturing Company, a manufacturer of machine tools. Petitioners claimed investment tax credits of $ 14,386.85 and $ 5,824.53 for their 1981 and 1982 taxable years, respectively. All investment tax credits were attributable to years prior to 1982. The amount claimed by petitioners for 1982 was attributable to a carryover from a prior year(s). The investment tax credits were for machinery purchased by *197 the partnership for its machine tool business and were claimed by the partners under section 38. In January 1982 the partnership form of business was changed to a corporate form of business. Petitioner, who was president of the corporation, was in charge of the machine shop and Engles was an outside salesman. Petitioner and Engles each owned 50 percent of the common stock of the corporation. The machine tools were being manufactured for the oil and gas industry. During the first quarter of 1982, a depressed oil and gas industry caused a severe downturn in the corporation's revenues. By mid-1982 the corporation had lost nearly all its customers and the expenses were being paid from corporate reserves. As payment for past due accounting fees, the corporate building was deeded to the company's accountant, Jerry L. White (White). White prepared the business tax returns of income and kept the books by making entries on a monthly basis. White closed out the corporation's books as of September 1982. The September 1982 closing date was used because petitioner had advised White that bankruptcy was being considered at or about that time. During October and November 1982, White made a *198 few miscellaneous entries to adjust the books and records. White's last visit to the corporate business premises was in late October 1982. The corporation was dormant beginning November 1982, and had no sales for November or December 1982. In a bankruptcy petition filed by petitioners during December 1982, the subject machinery was described as "repossessed in Sept. 1982." The machinery was present and capable of production at the corporation's business location until it was removed by third parties shortly after Christmas in 1982. The bankruptcy inventory report for petitioners did not list the machinery as petitioners' assets. The bankruptcy inventory did reflect the corporate shares as assets of the bankruptcy. The common stock of the corporation was listed in the bankruptcy petition as having no value. Petitioners' bankruptcy was a "no asset" estate and no distribution was made to creditors. Petitioners' bankruptcy estate was closed on August 9, 1983. OPINION The issue posed by the parties is whether petitioners, the corporation, or their bankruptcy estate is responsible for the investment credit recapture connected with the cessation of the corporate business and eventual *199 repossession of "section 38 property" by creditors. Complicating this situation are the transfer of the machinery to a corporate entity after the investment tax credit (ITC) was claimed by the partners individually and the eventual bankruptcy of petitioners in which the shares of corporate stock were listed as an asset, but the subject machinery was not. Section 38 [1] *200 provides for ITC for certain qualified property. To some extent, the amount of the credit and its availability are dependent upon the useful life of the qualified property. See sec. 46. If, however, the property is "disposed of" prior to the end of its useful life or it otherwise ceases to be section 38 property, the credit may be recaptured. Sec. 47(a)(1). Section 47(a)(1), in pertinent part, contains the following language: Early disposition, etc. -- If during any taxable year any property is disposed of, or otherwise ceases to be section 38 property with respect to the taxpayer, before the close of the useful life which was taken into account in computing the credit under section 38, then the tax under this chapter for such taxable year shall be increased by an amount equal to * * *. The parties here focus upon the language "is disposed of" and "ceases to be section 38 property." Petitioners argue that the property did not cease to be section 38 property prior to their entry into bankruptcy and that the machinery became part of their bankruptcy estate. Respondent argues that the property ceased to be section 38 property prior to the end of 1982 and was not a part of the bankruptcy estate. Before we resolve these matters, we must consider the legal implications of each transaction or event involving the property from the time of its acquisition until petitioners' bankruptcy. Subsequent to claiming part of the ITC while in the status of partner, petitioner and his partner incorporated their business. The partnership transferred the assets, including the section 38 property, to a newly formed corporation. We must consider whether the transfer of the section 38 property to a corporation results in recapture of the ITC. Section 47(b), in pertinent part, provides as follows: For purposes of subsection (a), property shall not be treated as ceasing to be section 38 property with respect *201 to the taxpayer by reason of a mere change in the form of conducting the trade or business so long as the property is retained in such trade or business as section 38 property and the taxpayer retains a substantial interest in such trade or business. Section 1.47-3(f)(1)(ii), Income Tax Regs., includes four requirements that must be met to qualify under section 47(b). [2] *202 There is no controversy in this case concerning whether the transfer to the corporation by the partnership qualified under section 47(b). [3] *203 In cases with substantially similar facts, we held that individuals who transferred their assets to a corporation qualified under section 47(b). Borgic v. Commissioner, 86 T.C. 643, 648-650 (1986); Aboussie v. Commissioner, 60 T.C. 549, 553-557 (1973), affd. without published opinion 504 F.2d 758 (5th Cir. 1974); see also Battaglia v. Commissioner, T.C. Memo. 1981-451. Accordingly, we hold here that the transfer of assets and continuation of the same business in corporate form was merely a change in the form of conducting the business. That being the case, no recapture of the ITC would arise because of the incorporation. The next logical step in this progression would be to determine alternatively whether there would be ITC recapture in the event of cessation of use by the corporation and/or if the property became part of the bankruptcy estate. Section 1.47-3(f)(5)(i), Income Tax Regs., [4] covers situations where a transferee of section 38 property (who received the property in a transfer that did not result in recapture) disposes of or ceases using the property. In such situations, the transferor becomes liable for the recapture of the ITC in the year of disposition or cessation of use. If the section 38 property becomes part of the *204 bankruptcy estate, then section 1398(f) may come into play. Under section 1398(f) a transfer from the debtor to the debtor's bankruptcy estate shall not be treated as a "disposition" for tax purposes. Although petitioners place great emphasis upon this section, we are unable to see how section 1398 would apply here. Section 1398(f)(1) is limited to a transfer from the debtor to his bankruptcy estate. In this case the debtor owned the stock, not the assets of the corporation. No distributions of the assets were made to the shareholders prior to or during the bankruptcy. Accordingly, the corporation-transferee owned the section 38 property until it was repossessed late in 1982. Respondent argues that the section 38 property was abandoned by petitioners or the corporation during 1982. Petitioners counter that if any abandonment occurred during 1982 it was from the corporation to creditors. [5] Petitioners go on to argue that the creditors did not bring formal proceedings for return of the equipment and so the property defaulted to the bankruptcy estate and the trustee. Petitioners argue that the trustee succeeded to their rights and obligations and that any abandonment of the section *205 38 property occurred, if at all, when the bankruptcy was concluded. Petitioners argue this even though the section 38 property was not made a part of the bankruptcy estate. We have factually found that petitioners did not own the section 38 property at the time of their bankruptcy filing and, further, that the property had been repossessed by creditors during 1982. Repossession is equivalent to cessation of use as section 38 property. Moreover, the property was not specifically included in the bankruptcy estate. The only assets listed as part of petitioners-bankrupts' estate which concern the section 38 property are the corporate shares. Finally, petitioners-bankrupts' estate was a "no asset" case and no distribution was made to creditors. [6] *206 Accordingly, as a factual matter, the section 38 property did not become a part of petitioners-bankrupts' estate. Even if the bankrupt estate and/or its trustee were entitled to administer the section 38 property during the pendency of the bankruptcy, the outcome of this case would not change. If the section 38 property could be considered either actually or theoretically a part of petitioners-bankrupts' estate, the failure of the trustee to administer the property or the abandonment of the property results in a legal conclusion or fiction that the property had never been in the estate. In other words, the property is treated as though it never left the possession or ownership of the pre-bankruptcy party in interest, nunc pro tunc. Brown v. O'Keefe, 300 U.S. 598, 602 (1937); Mason v. Commissioner, 646 F.2d 1309, 1310 (9th Cir. 1980), affg. per curiam 68 T.C. 163 (1977). This property interest principle is longstanding and without contrary precedent. Accordingly, in the circumstances of this case, [7] it would not make a difference whether the section 38 property had been listed as a part of the bankruptcy or could have been administered as part of the proceeding; it is legally *207 not considered a part of petitioners-bankrupts' estate, ab initio. We must next consider when the event triggering recapture occurred. Section 47(a)(1) requires recapture based upon a time formula which includes the following language: "for such useful life the period beginning with the time such property was placed in service by the taxpayer and ending with the time such property ceased to be section 38 property." The underlying issue is one where the parties disagree about when the property ceased to be section 38 property. Petitioners have argued that it was not during 1982 and respondent has argued that it was during 1982. Beyond that, neither party has focused upon a specific date "the property ceased to be section 38 property." Although we have decided that petitioners should be subject to the recapture provisions during *208 1982, the record in this case does not readily permit us to perceive the exact date of the cessation. The confusion arises because the bankruptcy petition reflects that the machinery was repossessed during September 1982. However, the machinery remained at the business, available to be used but otherwise dormant, until sometime around Christmas 1982 when it was removed (presumable by or on behalf of creditors) from petitioner's corporate business premises. The property ceased being section 38 property at a time no later than the time of its removal by creditors. Because none of the property had been used as section 38 property for 3 or more years (the threshold amount required for claiming any ITC) as of December 1982, it is unnecessary to determine the exact date of use cessation because the entire amount of the claimed credit must be recaptured. We hold that petitioners are liable for recapture of the ITC claimed for their 1982 taxable year. To reflect the foregoing, Decision will be entered for the respondent. Footnotes
1. Section references are to the Internal Revenue Code, as amended and in effect for the taxable year in issue.
2. Sec. 1.47-3(f)(1)(ii), Income Tax Regs., sets forth the following requirements to qualify as "a mere change in the form of conducting the trade or business": (a) The section 38 property * * * is retained as section 38 property in the same trade or business, (b) The transferor * * * of such section 38 property retains a substantial interest in such trade or business, (c) Substantially all the assets (whether or not section 38 property) necessary to operate such trade or business are transferred to the transferee to whom such section 38 property is transferred, and (d) The basis of such section 38 property in the hands of the transferee is determined in whole or in part by reference to the basis of such section 38 property in the hands of the transferor. ↩
3. For example, the parties have not discussed whether the transfer of the partnership interests and/or assets resulted in a termination of the partnership under sec. 708 or whether the basis of the machinery would be the same in the hands of the transferee as it had been in the hands of the transferor. This note is not intended to suggest that such issues should have been raised, but rather to reflect that we assume that the failure of the parties to address these points is intentional. Accordingly, there is no need for us to consider whether the transaction met the four requirements of sec. 1.47-3(f)(1)(ii), Income Tax Regs.↩, or to consider any other issue(s) which the facts in this case may have suggested.
4. Sec. 1.47-3(f)(5)(i), Income Tax Regs., contains, in pertinent part, the following provisions: If section 38 property * * * is disposed of by the transferee, or otherwise ceases to be section 38 property with respect to the transferee, * * * then under paragraph (a) of § 1.47-1 such property ceases to be section 38 property with respect to the transferor * * *.↩
5. Petitioners' argument is somewhat puzzling because abandonment of the sec. 38 property by the corporation to its creditors would also have resulted in recapture income tax liability for petitioners.↩
6. The record does not reveal whether there was any equity in the sec. 38 property which was repossessed by creditors. Nor does the record reveal whether the corporation was substituted for the partners with respect to any debt due on the property.
7. As a practical matter, it is likely that the machinery in question was insufficient in value to satisfy the outstanding secured debt obligations. That being the case, a bankruptcy trustee would have no interest in property in this situation because it would only serve to further deplete the bankrupt's estate to administer assets without equity or value.↩